Shannon E. T<small>ESAR</small>, Plaintiff-Appellant,

v.

Brett R. A<small>NDERSON</small>, Randal L. Anderson and American Family Mutual Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 2009AP1993. Submitted on briefs March 8, 2010.
—Decided July 29, 2010.*

2010 WI App 116

(Also reported in 789 N.W.2d 351.)

† Petition for Review filed.

240

Before Dykman, P.J., Lundsten and Higginbotham, JJ.

¶ 1. DYKMAN, P.J. Shannon E. Tesar appeals from a summary judgment dismissing American Family Mutual Insurance Company from this negligence action arising from an automobile accident.[1] We conclude that the trial court erred by granting summary judgment to American Family. We therefore reverse and remand for further proceedings consistent with this opinion.

¶ 2. Apart from a tragic result, the facts here are similar to those of many automobile accidents. Tesar's complaint alleged that there was a two-car automobile accident on February 13, 2003, and that both drivers,

---

[1] By coincidence, American Family insured both drivers in this accident, Alicia M. Vander Meulen and Brett R. Anderson. The trial court dismissed American Family only as it insured Vander Meulen. All of our future references to American Family pertain only to its liability insurance policy insuring Vander Meulen except as specifically noted otherwise.

Alicia Vander Meulen and Brett Anderson, were negligent in causing the accident. Tesar alleged that Vander Meulen was pregnant at the time of the accident and that he was the father of her unborn child. As a result of the accident, the unborn child was stillborn. Pursuant to Wisconsin's direct action statute, Wis. Stat. § 632.24 (2007–08),[2] Tesar sued only Anderson and American Family, in its dual capacity as insurer of the automobiles driven by Anderson and Vander Meulen.[3] At least for the purpose of summary judgment, the parties concede that the automobile accident was a cause of the stillbirth and that Tesar was the father of Vander Meulen's fetus.[4]

*Negligence*

¶ 3. American Family's motion for summary judgment challenged Tesar's assertion that American Family should be liable for Vander Meulen's negligence in the death of her fetus.[5] The trial court concluded that Vander Meulen did not have a duty to her fetus and that, even if Vander Meulen were found negligent, public policy prevented liability. The court was con-

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] Tesar also sued Randal L. Anderson, asserting that Randal Anderson was vicariously liable because he had sponsored Brett Anderson's motor vehicle operator's license. *See* Wis. Stat. § 343.15(2)(b). While this fact might become relevant after this case is tried, it is not relevant to our opinion.

[4] The trial court recognized that at trial Tesar would have to prove that he was the father of Vander Meulen's fetus, and that the accident caused the fetus's death. The parties agreed to this. Because the trial court dismissed Tesar's complaint, neither of these issues went further.

[5] In a companion case to this one, the supreme court concluded that Tesar could bring a motion to determine his

cerned with what it termed a "slippery slope" were it to allow Tesar's wrongful death case to proceed against American Family under Vander Meulen's insurance policy. This concern is the essence of American Family's argument on appeal.

¶ 4. Summary judgment methodology has been explained many times, and we need not do so again. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. Suffice it to say that here, no party asserts that there is an issue of material disputed fact, and each asserts entitlement to summary judgment.[6]

¶ 5. Wisconsin uses a four-element analysis to determine whether a complaint states an actionable claim for negligence. Though it may appear obvious, the initial inquiry we must make in a negligence case to be decided on a motion to dismiss is whether the complaint states a claim in negligence in the first place. *See Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158.[7]

---

parentage in the case now before us. *Shannon E. T. v. Alicia M. V.M.*, 2007 WI 29, ¶ 42, 299 Wis. 2d 601, 728 N.W.2d 636.

[6] Anderson contests the trial court's reasoning, asserting that its conclusion might result in Anderson being the only defendant whose negligence caused the accident and any resulting damages. Because we reverse the trial court's judgment, we need not address Anderson's concerns.

[7] We examine the first element, duty, to determine whether it was foreseeable under the circumstances that the defendant's act or failure to act would probably cause injury or damage to someone or something:

> We have frequently said that the concept of duty, as it relates to negligence cases, is inexorably interwoven with foreseeability. The

246

To constitute a cause of action for negligence there must be: (1) A duty to conform to a certain standard of conduct to protect others against unreasonable risks;[8] (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the injury; and (4) actual loss or damage as a result of the injury.

*Thomas v. Kells*, 53 Wis. 2d 141, 144, 191 N.W.2d 872 (1971). The standard of conduct or duty is "ordinary care." *Hocking v. City of Dodgeville*, 2009 WI 70, ¶ 11, 318 Wis. 2d 681, 768 N.W.2d 552; *Dixson v. Wisconsin Health Org. Ins. Corp.*, 2000 WI 95, ¶ 42, 237 Wis. 2d 149, 612 N.W.2d 721 (Abrahamson, C.J., dissenting). Using this standard, we are to make an assessment of what ordinary care requires under the circumstances.[9] *Hocking*, 318 Wis. 2d 681, ¶ 11, and *Dixson*, 237 Wis. 2d 149, ¶ 42. The four elements are described as duty, breach, cause, and damages. Negligence, described as the breach of a duty, *Hofflander v. St. Catherine's Hospital, Inc.*, 2003 WI 77, ¶ 60, 262 Wis. 2d 539, 664 N.W.2d 545, *Ramsden v. Farm Credit Services*, 223 Wis. 2d 704, 714, 590 N.W.2d 1 (Ct. App. 1998), can

duty of each person is to exercise ordinary care to refrain from any act which will cause foreseeable harm to another, to refrain from any act which creates an unreasonable risk to others.

*Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 46, 288 N.W.2d 95 (1980). The result: Unforeseeable damage means no duty. No duty, no negligence. Breach, cause and damage immaterial. End of lawsuit. We consider recent analyses of this rule in note 13, *infra.*

[8] Duty is a question of law. *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158.

[9] Neither party cites *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, 318 Wis. 2d 622, 768 N.W.2d 568, or *Hocking v. City of Dodgeville*, 2009 WI 70, 318 Wis. 2d 681, 768 N.W.2d 552, for other than principles found in cases prior to *Behrendt* or *Hocking*. Neither party claims that those cases alter the analysis we must apply here.

247

cause damage or injury, but the negligent person may still not be liable for the damages. " 'The measure of the defendant's duty in determining whether a wrong has been committed is one thing, the measure of liability when a wrong has been committed is another.' " *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 102 (N.Y. 1928) (Andrews, J., dissenting) (quoting Mr. Justice Holmes in *Spade v. Lynn & Boston R.R. Co.*, 52 N.E. 747, 748 (Mass. 1899)).

¶ 6. The element of duty has been problematic. In *Osborne v. Montgomery*, 203 Wis. 223, 231, 234 N.W. 372 (1931), when discussing "ordinary care," the court noted: "In a consideration of this subject it is easy to get lost in a maze of metaphysical distinctions, or perhaps it may better be said it is difficult not to be so lost." Two different concepts of duty formed the majority and the dissent in *Palsgraf*. Wisconsin has followed the dissent of Judge Andrews, who explained that "everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others."[10] *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 17, 318 Wis. 2d 622, 768 N.W.2d 568. Judge Cardozo, who wrote *Palsgraf*'s majority opinion, expressed a narrower view of duty: "In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining . . . ." *Palsgraf*, 162 N.E. at 99–100 (citation omitted).

■

¶ 7. Even after the four negligence elements have been established, courts may limit liability by consider

---

[10] However, an understanding that duty is "to the world at large" does not answer the question whether a duty exists "under the circumstances." *See Hocking*, 318 Wis. 2d 681, ¶ 12.

ations of public policy. *Alvarado v. Sersch*, 2003 WI 55, ¶ 17, 262 Wis. 2d 74, 662 N.W.2d 350. "Thus, negligence and liability are distinct concepts." *Id.*

■

¶ 8. How do these concepts work here? While we review summary judgments de novo, *Lambrecht*, 241 Wis. 2d 804, ¶ 21, we can see that the trial court's first reason for dismissing Tesar's complaint against American Family is wrong because the court noted: "I don't believe that a mother has a legal duty to . . . the fetus." This reasoning fits the majority opinion in *Palsgraf*, but it does not fit the broad view of duty in the *Palsgraf* dissent followed in Wisconsin. The correct question is whether Vander Meulen had a duty to the world at large to use ordinary care in operating her motor vehicle. With the correct question posed, the answer is easy: She did. The rest of the elements of a negligence claim follow without difficulty. Tesar has alleged that Vander Meulen breached her duty to use ordinary care in operating her motor vehicle, causing him damages (the wrongful death of a fetus which, had it been born alive, would have been his child). Thus, Tesar has alleged a claim of negligence. So far, there was no reason to dismiss Tesar's complaint against Vander Meulen's insurer, American Family.

¶ 9. The question becomes whether the claim should nonetheless be dismissed for public policy reasons.[11] In *Cormican v. Larrabee*, 171 Wis. 2d 309, 318, 491 N.W.2d 130 (Ct. App. 1992), we said:

---

[11] In "unusual" or "hard" cases, a court submits negligence, causation and damages to the jury, and if the jury finds all of these, the court examines public policy factors. *See Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 240, 55 N.W.2d 29 (1952). "Mine-run" negligence cases, such as the usual auto accident case with usual damages, are by far the more common,

Liability is the rule and relief for public policy reasons is the exception. "The cases in which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations." *Stewart v. Wulf*, 85 Wis. 2d 461, 479, 271 N.W.2d 79, 88 (1978). Our determination is not a matter of imposing liability but deciding whether not to impose it.

■

¶ 10. The supreme court has also decided when public policy considerations may be used to preclude liability: "[I]n cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability." *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 238, 55 N.W.2d 29 (1952); *see also Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 15, 272 Wis. 2d 46, 680 N.W.2d 345, and *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 656, 517 N.W.2d 432 (1994). "[C]ases in which a causally negligent tortfeasor is relieved of liability [on judicial public policy grounds] are infrequent and present unusual and extreme considerations." *Roehl Transport, Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 141, 325 Wis. 2d 56, 784 N.W.2d 542

and do not generate duty or causation problems seen in the "hard" cases. "Mine-run" is a term of art used to differentiate those cases from "hard" cases. "Mine-run" cases are submitted to a fact finder. "Hard" cases are decided by both a fact finder and a judge, the latter as a question of law. *See* Richard V. Campbell, *Duty, Fault, and Legal Cause*, 1938 Wis. Law Rev. 402, 414–25 (1938); *see also Smith v. County of Milwaukee*, 162 Wis. 2d 340, 356–67, 470 N.W.2d 274 (1991) (Heffernan, C.J., dissenting). Today's case is a "mine-run" case, but because of the trial court's decision, the parties' arguments, and the fact that this is a case of first impression, we will nonetheless examine public policy issues which can prevent liability in any negligence case.

(citing *Schlomer by Bye v. Perina*, 169 Wis. 2d 247, 253, 485 N.W.2d 399 (1992) (second alteration in original)). Using public policy factors to prevent liability is a drastic judicial remedy that should be employed sparingly because it denies a litigant his or her day in court, or, after a successful day in court, denies a litigant recovery for injury.

¶ 11. As explained by Judge Andrews in his dissent in *Palsgraf*, 162 N.E. at 103: "What we do mean by [policy factors] is that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics."[12] The Wisconsin Supreme Court put it this way: "Any rule which operates to limit *liability* for a wrongful act must be derived from judicial policy and its limits cannot be defined by any formula capable of automatic application, but must rest in the sound discretion of the court." *Osborne*, 203 Wis. at 237 (emphasis added). The key to understanding *Osborne* is to recognize that this sentence assumes a "wrongful act" or that causal negligence and damages have occurred. We need not exam-

---

[12] Judge Andrews was not using the word "politics" to mean what we might understand today to be partisan political politics. FUNK & WAGNALLS NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE (1923) defines "politics" as:

the branch of civics that treats of the principles of civil government and the conduct of state affairs; the administration of public affairs in the interest of the peace, prosperity, and safety of the state; statecraft; political science: in a wide sense embracing the science of government and civil polity.

The second edition of BLACKS LAW DICTIONARY (1910) defines "politics" as: "The science of government; the art or practice of administering public affairs."

ine policy factors where no negligence exists. *Osborne* explains: "If risk of harm cannot be foreseen by a reasonably prudent and intelligent man, the risk is not unreasonable, hence there is no negligence, consequently no liability."[13] *Id.* at 236.

---

[13] *Osborne v. Montgomery*, 203 Wis. 223, 236, 234 N.W. 372 (1931), arguably conflicts with *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 27, 318 Wis. 2d 622, 768 N.W.2d 568 (attaching foreseeability to breach), but not with *Hocking v. City of Dodgeville*, 2009 WI 70, ¶ 11, 318 Wis. 2d 681, 768 N.W.2d 552 (existence of duty, the first element in negligence analysis, has two aspects: (1) duty of ordinary care and (2) "assessment of what ordinary care requires under the circumstances"), or *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 30, 291 Wis. 2d 283, 717 N.W.2d 17 ("[O]rdinary care involves concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury" as consequence of act). We have noted that the opinions in *Hocking* and *Behrendt* "point us in different directions," as do the concurring opinions in those cases. *Maypark v. Securitas Sec. Servs. USA, Inc.*, 2009 WI App 145, ¶ 10 n.3, 321 Wis. 2d 479, 775 N.W.2d 270. In *Maypark*, we concluded that *Behrendt* conflated the two aspects of duty we note above. *Maypark*, 321 Wis. 2d 479, ¶ 10 n.4. *Behrendt* is the first case in Wisconsin jurisprudence to disassociate foreseeability from duty. However, *Hocking* returns to the unbroken line of cases holding that duty and foreseeability are inexorably intertwined. *See Hoida*, 291 Wis. 2d 283, ¶ 30; *Schuster v. Altenberg*, 144 Wis. 2d 223, 236–37, 424 N.W.2d 259 (1988); *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974). Having identified this problem, it becomes necessary to go further and explain the reason for the problem and its solution. Attorneys and trial courts should know the whole picture when they endeavor to try hard-case negligence lawsuits.

*Behrendt*, 318 Wis. 2d 622, ¶ 19, considers the RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7(a) (Proposed Final Draft No. 1, 2005). The Restatement attempts to tell what the law is in a general area, how it is changing, and where the

¶ 12. One way to understand the proper applica-- tion of public policy factors is to recognize that small-

authors think it should change. BLACKS LAW DICTIONARY 1314–15 (7th ed. 1999). Wisconsin negligence analysis is unique because we have adhered to the *Palsgraf* minority opinion since *Osborne*. Our analysis is probably shared by only one other state. *See infra* note 15. It is therefore not surprising that the Restatement does not describe Wisconsin negligence methodology. For instance, in the RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7 (2005), entitled "Duty," the authors note in Comment a.:

> There are two different legal doctrines for withholding liability: no-duty rules and scope-of-liability doctrines (often called "proximate cause"). An important difference between them is that no-duty rules are matters of law decided by the courts, while the defendant's scope of liability is a question of fact for the factfinder.

Though Wisconsin calls duty a question of law, *supra* note 8, in the vast majority of cases, duty is a jury question. *See* WIS JI—CIVIL 1005 (defining negligence as an act "that a reasonable person would *recognize* as creating an unreasonable risk of injury or damage") (emphasis added). This instruction describes fore-seeability, a part of duty in Wisconsin. *See Hoida*, 291 Wis. 2d 283, ¶ 30. The way to reconcile cases holding that duty is a question of law with WIS. JI—CIVIL 1005 is to recognize that most negligence cases are mine-run cases, where foreseeability is left to juries, while in hard cases, courts holding that the defendant had no duty are really saying that as a matter of law, damage or injury was not a reasonably foreseeable consequence of the defendant's act or omission, and no reasonable jury could find otherwise.

Wisconsin has always defined scope-of-liability (proximate cause/legal cause/public policy) as a question of law. *See Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 15, 272 Wis. 2d 46, 680 N.W.2d 345. The Restatement gets duty and public policy backwards. The RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7 cmt. j. notes: "Despite widespread use of foreseeability in no-duty determinations, this Restatement disapproves that practice and limits no-duty rulings to articulated policy or principle . . . ." Yet, Wisconsin has been successfully using foreseeability to define duty for seventy-five years. *See*

changes in facts can and often should lead to different results. The result of the consideration of a public policy

*Hoida,* 291 Wis. 2d 283, ¶ 30; *University Dodge, Inc. v. Drott Tractor Co.,* 55 Wis. 2d 396, 399–400, 198 N.W.2d 621 (1972); *Osborne,* 203 Wis. at 236.

Despite the RESTATEMENT (THIRD) OF TORTS' attempt to change negligence analysis by excising duty and adding complexity, forty-seven states including Wisconsin use foreseeability as an integral part of their duty analysis. *See* Benjamin C. Zipursky, *Foreseeability in Breach, Duty, and Proximate Cause,* 44 Wake Forest L. Rev. 1247, 1260 (2009). The RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7(a) defines duty as: "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm," a definition Wisconsin uses, but by adding "foreseeable" before "risk." The Restatement mirrors Wisconsin analysis when it provides: "Thus, for reasons explained in Comment i., courts should leave [foreseeability] determinations to juries unless no reasonable person could differ on the matter." *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7 cmt. j.; *Gritzner v. Michael R.,* 2000 WI 68, ¶ 24 n.4, 235 Wis. 2d 781, 611 N.W.2d 906. Wisconsin has been doing that for seventy-five years.

Inexplicably, Comment i. advocates a categorical determination of duty, requiring a group of situations where duty does not exist. The Restatement concedes: "Even when such categorical determinations are adopted, exceptions or limitations may also be appropriate." RESTATEMENT (THIRD) OF TORTS: Liability for Physical Harm § 7 cmt. i. The concept of adopting categories of duty and then exceptions to those categories can only be viewed as a nightmare. The Restatement wants "to eliminate foreseeability in duty so that judges do not invade the province of the jury." Zipursky, *supra,* at 1275. By using WIS. JI—CIVIL 1005 and only finding lack of duty where no reasonable jury could find foreseeability, Wisconsin has been avoiding this problem for seventy-five years. The Restatement's excision of foreseeability is nothing less than eliminating duty in Wisconsin's negligence methodology. John C. P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law,* 54

254

factor which drives one case will often change with a small change in the facts in another case. This means that prior decisions seldom dictate the result in subsequent cases because so frequently there are new or different facts which suggest a different result.[14]

---

VAND. L. REV. 659–60 (2001), agrees. (RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7, qualified by § 6, offers a three-element account of negligence). Wisconsin has followed a far better methodology for seventy-five years. That methodology works every time, and is easily explainable. Our case law and jury instruction defines the proper place of judge and jury. Why mess with success?

Finally, we note that in *Palsgraf*, Judge Andrews used "duty to the world at large" not to *define* duty, but as a way to explain the difference between his view and that of Judge Cardozo's majority opinion. Owing a duty to the world does not explain whether a defendant in a Wisconsin negligence case has a duty under the circumstances of the case at hand. No Wisconsin case has held that negligence is now a three-element analysis. Duty still exists as the first element of negligence. Duty to the world cannot mean that in any case where negligence is asserted, a duty exists, no matter what the facts of the case reveal or how fanciful are the plaintiff's allegations. Once we accept, as we do, that duty is still an element in Wisconsin negligence analysis, it becomes necessary to determine whether, under the facts and circumstances pled or proven, the defendant in the case at hand had a duty. *See Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350 ("In Wisconsin a duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person."), *Johanson v. Webster Mfg. Co.*, 139 Wis. 181, 184, 120 N.W. 832 (1909) ("Negligence in law is not mere carelessness, but is careless conduct under such circumstances that an ordinarily prudent person would anticipate some injury to another as a reasonably probable result thereof."). Saying that everyone owes a duty of due care to the world begs the real question by avoiding the facts and circumstances of the case at hand.

[14] In *Beacon Bowl, Inc. v. Wisconsin Electric Power Co.*, 176

¶ 13. Some of the most frequently cited public policy factors which guide our answer are:

> (1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion to the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; and (6) recovery would enter into a field that has no sensible or just stopping point.

*Behrendt*, 318 Wis. 2d 622, ¶ 29 (citation omitted). This list is not exclusive. *Cormican*, 171 Wis. 2d at 319–20 (citing *Schuster v. Altenberg*, 144 Wis. 2d 223, 424 N.W.2d 159 (1988)). We will examine the most frequently cited public policy factors to determine whether one or more delimit liability here. "The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended." *Waube v. Warrington*, 216 Wis. 603, 613, 258 N.W. 497 (1935), *overruled on other grounds by Bowen*, 183 Wis. 2d 627, *as recognized by Rockweit v. Senecal*, 197 Wis. 2d 409, 426, 541 N.W.2d 742 (1995).

¶ 14. We first need the facts which drive our public policy analysis. This is an automobile accident case. Tesar is not suing Vander Meulen. The only

---

Wis. 2d 740, 763, 501 N.W.2d 788 (1993), the court addressed a court of appeals certification question asking whether *Ransome v. Wisconsin Electric Power Co.*, 87 Wis. 2d 605, 275 N.W.2d 641 (1979), "applied" in the certified case. The supreme court replied: "*Ransome* has relevance to this action although it does not 'apply' to this action. Liability is determined on a case-by-case basis in negligence and strict liability cases, depending on the facts." *Id.*

relevant defendants are Anderson, the driver of one car involved in the collision, and American Family, in both its capacity as Anderson's insurer and its capacity as Vander Meulen's insurer. Tesar has alleged that both drivers were causally negligent, resulting in the death of the fetus that Vander Meulen was carrying which, had it been born alive, would have been his child. We will consider the most frequently cited public policy grounds American Family claims delimit its liability with respect to its status as Vander Meulen's insurer.

¶ 15. (1) "The injury is too remote from the negligence." The death of a person involved in an automobile accident, or the death of that person's fetus, is not a remote consequence from an automobile accident caused by negligent conduct. Deaths from automobile accidents are unfortunately common, and fetal death as a result of such an accident has occurred, though not as commonly. Here, the death of the fetus is not in any sense remote from the negligence of the drivers.

¶ 16. (2) "The recovery is too out of proportion to the culpability." Recovery is not out of proportion to the culpability of either Anderson or Vander Meulen. Indeed, this is a mine-run lawsuit, much like many other automobile accident lawsuits, albeit with tragic results. Holding negligent automobile operators' insurance companies liable for injury to an occupant of a vehicle is common and this is true even when the injured party is a child and the negligent party is the child's mother. For purposes of this factor, there is no practical difference between Anderson and his insurer, American Family, being liable for the stillbirth of Vander Meulen's fetus and American Family being so liable because it insured Vander Meulen. Moreover, this public policy factor is balanced against the plaintiff's culpability, which is

zero. *Colla v. Mandella*, 1 Wis. 2d 594, 600, 85 N.W.2d 345 (1957), holds:

> To the suggestion that the damages in the present case are wholly out of proportion to [defendant's] culpability, it may be answered that neither [plaintiff or his wife] were negligent or culpable at all, and hence it would be more unfair to leave the burden on them than to put a part of it on the defendants.

¶ 17. (3) "The harm caused is highly extraordinary given the negligent act." The harm here, though not a usual consequence of an automobile accident, cannot be termed "highly extraordinary." Deaths, including fetal deaths, are unfortunately far too common to fit into the "highly extraordinary" category.

¶ 18. (4) "Recovery would place too unreasonable a burden on the negligent tortfeasor." If Tesar recovers, his recovery will not place an unreasonable burden on the allegedly negligent tort-feasor. The burden on Vander Meulen is that she may be required to face being a witness to her own negligence and the role that her negligence played in the death of her fetus. This is not an unreasonable burden. Indeed, it is comparable to the relatively commonplace burden that falls on negligent drivers who play a causal role in death or severe injury to a spouse, son, or daughter. If this burden were unreasonable, the same would be true in every automobile accident case in which the negligence of a mother harms a spouse or child. That cannot be true.

¶ 19. (5) "Recovery would be too likely to open the way to fraudulent claims." There is no concern about fraudulent claims. There is no reason to suppose that people will fake fetal deaths resulting from automobile

accidents. There is no more potential for fraud in this type of case than there is in other categories of fatal automobile accidents.

¶ 20. (6) "Recovery would enter a field that has no sensible or just stopping point." American Family would have us conclude that the "field" we are entering is the field of mothers whose negligence in many forms injure fetuses. We do not enter that field.

¶ 21. American Family argues that if we permit liability here, then we have set out on a slippery slope which leads to liability in other situations where, it contends, there plainly should not be liability. For example, a decision allowing this case to go forward will open the door to husbands suing wives for not exercising properly or not taking the proper vitamins during pregnancy. We disagree.

¶ 22. The field we are in is a well-known field in the law, the field of holding insurance companies liable for the negligent acts of insured drivers, even when a driver's negligence injures or kills a family member. Under current law and practice, it is relatively common for a child injured in an automobile accident to be a plaintiff in a negligence action against a mother. So far as we can discern, permitting children to sue parents for negligence in this context has not opened the door to suits alleging the sort of negligent acts that concerned the circuit court and American Family, such as negligently feeding a child too much junk food or negligently failing to prompt a child to get enough exercise. American Family provides no reason to believe that the slope is more slippery in the fetus context than in the live-born-child context when the starting point of the "slope" is negligent driving.

¶ 23. We emphasize that no reader of this opinion should surmise that we are weighing in on whether

women should be held liable for other negligent acts that harm fetuses. The Wisconsin Supreme Court has addressed an issue similar to American Family's "no sensible or just stopping point" argument here by using policy factors other than the most frequently cited ones to limit liability in *Goller v. White*, 20 Wis. 2d 402, 413, 122 N.W.2d 193 (1963). Though the court abrogated parental immunity in *Goller*, it adopted two exceptions to its ruling: "(1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Id.* Although we need not do so here, we can discern no reason why these limitations, with appropriate alterations, could not be applied in a fetus context. Wisconsin appellate courts have used policy factors to delimit liability for seventy-five years. There is no reason to believe that they will not continue to do so to prevent negligence cases from going too far.

¶ 24. American Family recognizes, as it must, that a viable fetus is a "person" for the purpose of the wrongful death statute, WIS. STAT. § 895.03, and that its parents may bring a wrongful death action where the defendant is alleged to be an automobile driver whose negligence caused a viable fetus to be stillborn. *Kwaterski v. State Farm Mut. Auto. Ins. Co.*, 34 Wis. 2d 14, 22, 148 N.W.2d 107 (1967). American Family does not dispute that Wisconsin has abolished the parental immunity rule, allowing a child or his or her parent to sue the other parent for negligence, with exceptions not present here. *See Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 563–64, 514 N.W.2d 399 (1994);

*Goller*, 20 Wis. 2d at 413. Thus, from American Family's viewpoint, the father of a one-day-old child or the child may sue the mother for damages to the child caused by the mother's postbirth negligence, but the father of a fetus injured one day from its estimated date of delivery may not sue its mother for damages caused by the mother's negligence. What public policy factor supports this disparate treatment? We see none.

¶ 25. We will therefore not deny Tesar his day in court. Application of public policy factors to the facts of this case does not lead us to conclude that we should limit American Family's liability. We see no reason why American Family should be shielded from liability caused by the alleged negligent driving of Vander Meulen.

*Cases from other jurisdictions:*

¶ 26. American Family also asserts that we should follow precedent from other states where courts have prevented liability on facts American Family analogizes to the facts here. American Family concedes that courts from other jurisdictions are split on the ultimate issue of a mother's liability for her negligent act which causally damages her fetus. We will start with the cases American Family believes we should follow, all of which conclude that a pregnant woman does not owe a duty to her unborn child. `

¶ 27. In *Stallman v. Youngquist*, 531 N.E.2d 355 (Ill. 1988), the Illinois Supreme Court considered a child's complaint against her mother asserting that the mother negligently caused an automobile collision which injured the child while the child was in utero. Illinois follows the *Palsgraf* majority rule which exam-

ines whether, under the facts of the case, the defendant owes a duty to the plaintiff. *Schmid v. Fairmont Hotel Company-Chicago*, 803 N.E.2d 166, 177 (Ill. App. Ct. 2003). The *Stallman* court held that the defendant mother owed no legally cognizable duty to her developing fetus. *Stallman*, 531 N.E.2d at 360. Wisconsin has rejected the *Stallman* and *Schmid* "duty to plaintiff" methodology in favor of Justice Andrews's "duty to everyone to exercise ordinary care." Our court explained Wisconsin's approach in *Schuster*, 144 Wis. 2d at 253–54:

> Some other courts have . . . followed the readily identifiable victim analysis. However, as discussed in *Brady v. Hopper*, 570 F. Supp. 1333 (D. Colo. 1983), *aff'd* 751 F.2d 329 (10th Cir. 1984), these decisions are premised upon the majority opinion in *Palsgraf*, in which duty is measured by the foreseeability of harm to a particular plaintiff. Specifically, the court in *Brady* explained:
>
> > . . . . As explained by Justice Cardozo, negligence is a matter of relation between the parties, and must be found upon the foreseeability of harm to the person in fact injured. *Palsgraf v. Long Island R. Co.*, 162 N.E. at 101, 570 F. Supp. at 1339 . . . .
>
> As discussed more completely above, Wisconsin, has rejected this negligence formulation in favor of the *Palsgraf* minority view. Accordingly, . . . the "legal obstacle" of foreseeability of harm to the person in fact injured is not one which exists in Wisconsin . . . .

¶ 28. Texas used the same analysis Illinois uses when the Texas Court of Appeals considered *Chenault v. Huie*, 989 S.W.2d 474 (Tex. App. 1999). Texas also uses the *Palsgraf* majority "duty to the plaintiff" methodology. *Garcia v. Cross*, 27 S.W.3d 152, 155–56 (Tex. App. 2000). The *Chenault* court concluded that a

262

mother does not owe a legal duty to her fetus. *Chenault*, 989 S.W.2d at 474. Chenault had alleged that while she was in utero, her mother used cocaine and alcohol, resulting in Chenault's cerebral palsy. *Id.* at 475. Our answer is the same as our answer regarding Illinois' rule: Wisconsin does not use *Palsgraf's* "duty to the plaintiff rule." We define duty much more broadly.

¶ 29. Finally, American Family relies on *Remy v. MacDonald*, 801 N.E.2d 260 (Mass. 2004). *Remy* was another automobile accident case. Massachusetts, like Illinois and Texas, uses the analysis of the *Palsgraf* majority. *Nycal Corp. v. KPMG Peat Marwick LLP.*, 688 N.E.2d 1368, 1370 (Mass. 1998).[15] So, it is not surprising that the Massachusetts court also adopted the analysis used in *Stallman* and *Chenault*. Again we repeat: Wisconsin uses a negligence methodology much different from Massachusetts' methodology. Wisconsin does not extend liability to the point where recovery would shock the conscience of society. *Pfeifer*, 262 Wis. at 238.

¶ 30. *Stallman*, *Chenault* and *Remy* all conclude that the defendants had no duty to the plaintiff. In Wisconsin, "duty" is one of four necessary components in a negligence action. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17. When a court concludes that a defendant does not

---

[15] *Nycal Corporation v. KPMG Peat Marwick LLP.*, 688 N.E.2d 1368, 1370 (Mass. 1990), is also of interest here for its comment: "This test [duty to the world] is generally disfavored, having been adopted by courts in only two jurisdictions. *See Touche Ross & Co. v. Commercial Union Ins. Co.*, 514 So.2d 315 (Miss. 1987); *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983)."

have a duty, the result is that the defendant is not negligent. *See University Dodge, Inc. v. Drott Tractor Co.*, 55 Wis. 2d 396, 399–400, 198 N.W.2d 621 (1972). Thus, in *Stallman, Chenault* and *Remy*, when the courts concluded that the defendants had no duty to the plaintiff, the result was that the defendants were not negligent. Wisconsin's unique "duty to everyone" analysis is a very different inquiry. Wisconsin's duty analysis focuses on the probable consequences of a defendant's act to anyone and everyone. *Stallman, Chenault* and *Remy* focus only on the defendants' duty to the plaintiffs. So, while those cases conclude that the defendants had no duty to the plaintiffs, and the defendants were therefore not negligent, Wisconsin looks at a defendant's act to determine whether it was foreseeable that the act might cause injury or damage to someone. In Wisconsin, if the answer is "yes," the defendant is negligent and the only way a defendant can avoid liability is by using public policy factors we have already determined do not delimit liability here.[16]

¶ 31. We need not examine in any detail the three cases American Family concedes hold against it, the reasoning of which American Family describes as "ham handed," and using "simplistic" or "quixotic" reasoning. *See Bonte v. Bonte*, 616 A.2d 464 (N.H. 1992); *National Cas. Co. v. Northern Trust Bank*, 807 So.2d 86 (Fla. Dist. Ct. App. 2001); and *Grodin v. Grodin*, 301 N.W.2d 869 (Mich. Ct. App. 1980). All three cases involve a child suing its mother for prenatal injuries. While the reasoning of the cases differs, none use Wisconsin's unique negligence analysis. American Family criticizes the three cases because they do not consider "the profound

---

[16] We do not consider cause or damages because these factors are not at issue here.

difference between the actions of parents of born children and that of a pregnant woman carrying an unborn child." However, although American Family asserts there are profound differences, it does not identify any difference that matters when comparing the "born" with the "unborn" injured as a result of a mother's negligent driving.

*Causation*

¶ 32. American Family asserts that the Vander Meulen fetus's stillbirth was not directly caused by Vander Meulen's negligence but was secondary to that negligence. Though couched in terms of public policy, American Family is really attacking causation. American Family's argument is undeveloped, and we do not pursue it further. *See State v. Butler*, 2009 WI App 52, ¶ 17, 317 Wis. 2d 515, 768 N.W.2d 46.

*Wrongful Death Statute*

¶ 33. American Family also argues that because the wrongful death statute, WIS. STAT. § 895.03, refers to "the party injured," which it contends is Vander Meulen's fetus, Tesar's wrongful death claim cannot proceed as a matter of law. Section 895.03 reads:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state.

265

¶ 34. American Family contends that Wɪs. Sᴛᴀᴛ. § 895.03 permits "a claim against a pregnant mother for the wrongful death of a fetus *only* to the extent Wisconsin law also would permit the 'party injured,' i.e., the fetus, to bring a claim against a mother for negligently causing prenatal injuries that did not result in death." But § 895.03 says nothing about who can bring a wrongful death claim, or who the defendants can be. The statute only permits the representative of a deceased to maintain an action the deceased could have maintained had he or she lived. *Harris v. Kelley*, 70 Wis. 2d 242, 248, 234 N.W.2d 628 (1975), explained the limited function of § 895.03: "This section merely authorizes recovery by establishing the responsible party's liability, and does not state who is entitled to maintain the action, the type and amounts of damages recoverable, or to whom the recovery belongs." We have already held that American Family, a potentially responsible party, can be liable to Tesar. American Family's argument is no more persuasive when packaged as statutory interpretation.

¶ 35. American Family concludes: "Such an invasive and all-encompassing legal duty imposed on a mother to her unborn child, subject to enforcement by the civil justice system, is massively intrusive," quoting *Stallman*, 531 N.E.2d at 361: "Judicial scrutiny into the day to day lives of pregnant women would involve an unprecedented intrusion into the privacy and autonomy of the citizens of this State." Our opinion does not invite this intrusion. No future Wisconsin court is required or encouraged to venture into cases which shock the conscience of society by anything we have written here. Public policy is decided on a case-by-case basis and we only decide the issue before us. American

266

Family concedes, as it must, that a father is entitled to maintain a wrongful death action for the death of his unborn child. Because this case alleges injury caused by the negligent driving of a vehicle, that is all this case is about.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.

¶ 36. LUNDSTEN, J. (*concurring*). I join all parts of the majority opinion except footnotes 7, 11, and 13, which contain legal discussions and commentary about "duty." I stress that my decision not to join footnotes 7 and 13 is not based on agreement or disagreement with their contents. Rather, the problem in my view is that those footnotes go too far afield from the dispute before us. Paragraphs 5 through 8 in the majority opinion are more than sufficient to both explain why the circuit court's duty holding is incorrect and to dispose of American Family's weak argument that duty is lacking. I do not join footnote 11 because it is my belief that it is not helpful to think about negligence cases in terms of whether they are "mine-run" or instead "unusual" or "hard."