Carissa A. ERDMANN,
by her Guardian ad Litem,
Theresa B. Laughlin,
Plaintiff-Appellant,

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY,
Defendant-Third-Party Plaintiff-Respondent,

BADGERCARE/MEDICAID MANAGED CARE PROGRAM,
c/o Security Health Plan of Wisconsin, Inc.,
Defendant,

v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
Third-Party Defendant-Respondent.†

Court of Appeals

*No. 2009AP2457. Submitted on briefs January 4, 2011.*
*—Decided February 8, 2011.*

2011 WI App 33

(Also reported in 796 N.W.2d 846.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Theresa B. Laughlin,* Wausau.

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the briefs of *Daniel R. Peters* of *Pietz, VanderWaal, Stacker & Rottier, S.C.,* Wausau.

On behalf of the third-party-defendant-respondent, the cause was submitted on the brief of *Michael Vescio* of *SmithAmundsen LLC*, Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Carissa Erdmann, by her guardian ad litem, Theresa Laughlin, appeals summary judgments in favor of Progressive Northern Insurance Company and Allstate Property and Casualty Insurance Company. She claims the circuit court erroneously concluded that judicial public policy bars her strict liability claim under Wisconsin's dog injury statute, WIS. STAT. § 174.02.[1] We agree, and reverse and remand for further proceedings.

¶ 2. Allstate alternatively claims it is entitled to summary judgment because its insured was not a statutory owner for purposes of the dog injury statute. We conclude Allstate's insured is a statutory owner because she exercised dominion over the dog, sheltered the dog, provided water, and was generally responsible for the dog's well-being at the time Erdmann was bitten.

## BACKGROUND

¶ 3. Erdmann filed a complaint against Progressive alleging that on June 3, 2007, just before Erdmann's fourth birthday, she was bitten by a dog named Chase while at the home of Carole Jorgensen. The complaint alleged that the dog was owned by Jorgensen's daughter, Stacy Plamann, and that Progressive was Plamann's homeowners' insurer. Erdmann

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

sought to hold Plamann strictly liable for her injuries under Wisconsin's dog injury statute, which holds anyone who owns, harbors, or keeps a dog strictly liable for injuries caused by the dog.[2] *See* WIS. STAT. § 174.02(1); *see also* WIS. STAT. § 174.001(5) (defining "owner" under § 174.02(1)). Progressive subsequently filed a third-party summons and complaint against Allstate, Jorgensen's homeowners' insurer.

¶ 4. Progressive and Allstate filed a motion for summary judgment, asserting that public policy barred liability against both Plamann and Jorgensen. The supporting affidavits included deposition testimony from Jorgensen, who stated that on June 3 she was babysitting her grandchildren and Erdmann, and also taking care of Chase. Jorgensen testified that the children were in a "mad rush" to get out of the house to the swimming pool. When Erdmann "went running down the hallway she tried to stop from sliding and Chase was laying in the area . . . and she ran right into him. As she fell he tried to get up and get out of the way and that's when it ended up she got bit." Jorgensen testified that Chase was laying down, but she was ambiguous as to whether Chase was sleeping. Nonetheless, Progressive and Allstate argued that Jorgensen's testimony regarding Chase's dormant state was sufficient to bar liability under *Alwin v. State Farm Fire & Cas. Co.*, 2000 WI App 92, 234 Wis. 2d 441, 610 N.W.2d 218, which they claimed precluded strict liability for injuries caused by sleeping dogs.

---

[2] The term "strict liability" refers to a judicial doctrine that relieves a plaintiff of the burden of proving specific acts of negligence and protects against some defenses. *Fandrey v. American Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 9, 272 Wis. 2d 46, 680 N.W.2d 345.

¶ 5. The circuit court granted Progressive and Allstate summary judgment and dismissed Erdmann's claims, reasoning that public policy barred her recovery. Erdmann appeals.

## DISCUSSION

■

¶ 6. We review a grant of summary judgment de novo using the same standard and methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

■

¶ 7. Ordinarily, we would examine the pleadings to determine whether a claim for relief has been stated, and then assess whether those pleadings demonstrate a factual issue. *Green Spring Farms*, 136 Wis. 2d at 315. But because no one has challenged the sufficiency of the pleadings, we move to the next step and examine the moving party's affidavits and other proof to determine whether the moving party has made a prima facie case for summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980), *abrogated on other grounds by Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139. A defendant establishes a prima facie case by showing a defense that would defeat the plaintiff's claim. *Id.* If the defendant has made such a showing, the final step is to determine whether the plaintiff has shown that material facts are in dispute, or that reasonable alternative inferences can be drawn from the undisputed material facts. *Id.* In this case, we need not determine whether material facts are in

dispute because we conclude that Progressive and All-state have failed to establish a prima facie case for summary judgment.

¶ 8. In Wisconsin, negligence and liability are distinct, but related, inquiries. Even if a plaintiff has shown that the tortfeasor's negligence was the cause-in-fact of his or her injuries, liability may still be precluded as a matter of judicial public policy. *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 187, ¶ 12, 285 Wis. 2d 766, 703 N.W.2d 743. We may bar recovery against an otherwise liable tortfeasor when:

> (1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion to the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; [or] (6) recovery would enter into a field that has no sensible or just stopping point.

*Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 29, 318 Wis. 2d 622, 768 N.W.2d 568 (quotations omitted). These factors are potentially applicable in a strict liability action under WIS. STAT. § 174.02(1). *Fandrey v. American Fam. Mut. Ins. Co.*, 2004 WI 62, ¶¶ 21–22, 272 Wis. 2d 46, 680 N.W.2d 345.

¶ 9. The circuit court here relied on two decisions in which Wisconsin courts used judicial public policy to bar liability for injuries caused by dogs: *Alwin* and *Fandrey*. In the past, we have repeatedly cautioned that the application of public policy to bar liability must be done on a "case-by-case" basis. *See Alwin*, 234 Wis. 2d 441, ¶ 12; *Becker v. State Farm Mut. Auto. Ins. Co.*, 41 Wis. 2d 804, 816–17, 416 N.W.2d 906 (Ct. App. 1897).

"[S]mall changes in facts can and often should lead to different results." *Tesar v. Anderson*, 2010 WI App 116, ¶ 12, 329 Wis. 2d 240, 789 N.W.2d 351. Consequently, prior public policy decisions "seldom dictate the result in subsequent cases because so frequently there are new or different facts which suggest a different result." *Id.* The decisions in *Alwin* and *Fandrey* are of no persuasive value because they are based on facts that are radically different than the facts here.

¶ 10. *Alwin* was the genesis of the "sleeping dog" doctrine, which Progressive and Allstate believe bars Erdmann's recovery. In that case, we used public policy to relieve a tortfeasor of liability for injuries sustained by her mother, who tripped and fell over a sleeping dog. *Alwin*, 234 Wis. 2d 441, ¶ 2. Our public policy discussion emphasized that the dog was nothing more than a "passive instrumentality leading to injury." *Id.*, ¶ 13. We concluded that imposing strict liability under those circumstances—where an inert dog causes an injury—would indefinitely expand liability for dog owners. *Id.*, ¶¶ 13–14. Consequently, we held that permitting recovery for injuries caused by sleeping dogs "would effectively result in a pure penalty for dog ownership." *Id.*, ¶ 14. Thus, the "sleeping dog" doctrine is not an independent doctrine barring recovery, but a particular application of one judicial public policy factor.

¶ 11. Different facts compelled our supreme court to bar recovery for a dog bite in *Fandrey*. In that case, a three-year-old girl and her mother entered a friend's unlocked home without an invitation or notice. *Fandrey*, 272 Wis. 2d 46, ¶ 3. Once inside, the friend's dog bit the child, and the child sued the homeowners. *Id*, ¶¶ 3–4. The supreme court barred liability, citing three public policy grounds. It first concluded that the child's injuries were too out of proportion to the culpability of

the homeowners, who merely failed to lock their doors. *Id.*, ¶ 34. Second, allowing recovery would place too unreasonable a burden on the homeowners, who should not have to keep their dog locked away when they expect their house to be empty. *Id.*, ¶ 35. Third, extending liability to uninvited guests in a dog owner's home would enter a field with no sensible or just stopping point. *Id.*, ¶ 39.

¶ 12. This case does not involve injuries caused by a dormant dog or sustained by an uninvited guest. Unlike liability in *Alwin*, liability in this case hinges on an affirmative act of the dog. Chase was not merely some "passive instrumentality;" Erdmann's injuries were a direct result of Chase's bite. Further, unlike the plaintiff in *Fandrey*, the injured party here was a welcome guest in the dog owner's home. There is no dispute that Jorgensen agreed to watch Erdmann for the day. *Alwin* and *Fandrey* are therefore inapposite.

██

¶ 13. We next consider whether public policy bars liability under the facts of this case. Using public policy to preclude liability is an extraordinary matter. *See Fandrey*, 272 Wis. 2d 46, ¶ 15 (six public policy factors are designed to elicit those circumstances in which it would "shock the conscience of society" to impose liability). Doing so before trial is particularly disfavored. *See Padilla v. Bydalek*, 56 Wis. 2d 772, 779–80, 203 N.W.2d 15 (1973) ("[I]t is usually better practice to submit the [public policy] issue to the jury insofar as determining the issues of negligence and causation in the same manner as in the ordinary case."). Based on the record before us, this case appears to be nothing more than a run-of-the-mill dog bite case, rendering the public policy factors inapplicable.

¶ 14. The first factor assesses whether the injury is too remote from the negligence. There are no intervening causes that would render Erdmann's injury too remote from Plamann's and Jorgenson's assumed negligence. *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 762, 501 N.W.2d 788 (1993) (assessing whether injury is too removed from the negligence in time, place, or sequence of events). Indeed, this is the kind of incident that the dog injury statute, WIS. STAT. § 174.02, would ordinarily cover. *See Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶ 71, 322 Wis. 2d 21, 777 N.W.2d 67.

¶ 15. The second factor precludes liability when the recovery is wholly out of proportion to the culpability of the negligent tortfeasor. Both Jorgensen and Plamann knew Chase would be interacting with small children. Neither appears to have made any effort to ensure that the children were separated from the dog. Unlike the owners in *Fandrey*, whom the supreme court concluded could have done nothing further to prevent the injury, Plamann and Jorgenson could have taken any number of steps to prevent Erdmann from being bitten.

¶ 16. The third factor analyzes whether the harm caused is highly extraordinary given the negligent act. Erdmann's injury is not a highly extraordinary result of dogs and small children playing together. Our supreme court reached a similar conclusion in *Pawlowski*, 322 Wis. 2d 21, ¶ 72, when it noted that "[t]here is always the risk that a dog will get loose and injure someone." The court found that the legislature had placed that risk on dog owners rather than those injured:

> Section 174.02 embodies a legislative judgment that those who own, harbor, or keep a dog are in the best position to reduce the risk of injury and should

156

bear liability for any damages, rather than making those who are injured by no fault of their own suffer without compensation. It is not "highly extraordinary" that providing shelter for a dog in your home may create risks for a passerby if the dog is not properly restrained.

*Id.* Along the same lines, the risk of injury created by permitting small children to play near a dog is not highly extraordinary. *See, e.g., Smaxwell v. Bayard,* 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923 (three-year-old injured by dogs); *Gonzalez v. Wilkinson,* 68 Wis. 2d 154, 227 N.W.2d 907 (1975) (basset hound bit one-and-one-half-year-old child).

¶ 17. The fourth factor looks to whether recovery would place an unreasonable burden on the negligent tortfeasor. Permitting Erdmann to recover does not place an unreasonable burden on those similarly situated to Jorgensen and Plamann because the injury in this case could have been prevented by simply separating the dog from the children. It is not unreasonable to require that those who allow someone else's dog in their home take adequate steps to safeguard visitors. *Cf. Pawlowski,* 322 Wis. 2d 21, ¶ 66 ("In allowing an unknown dog to live in one's home, it is not unreasonable that the homeowner take precautions to ensure that the dog is leashed or restrained in some manner when walking in the street.").

¶ 18. The fifth factor precludes liability when recovery would be too likely to open the way to fraudulent claims. As the supreme court noted in *Pawlowski,* 322 Wis. 2d 21, ¶ 73, liability under Wis. Stat. § 174.02 requires proof of ownership, as well as proof of causation and damages. Permitting recovery in this case does not open the way to fraudulent claims.

157

¶ 19. The sixth public policy factor focuses on whether recovery would enter a field that has no sensible or just stopping point. Unlike *Alwin*, this does not appear to be a case in which permitting recovery is tantamount to a "pure penalty for dog ownership." *Alwin*, 234 Wis. 2d 441, ¶ 14. We cannot conceive of a situation in which it would appear unjust to hold a dog owner liable in accordance with our rationale in this case. Dog owners, whether legal or statutory, are generally responsible for injuries sustained when their dog bites someone. We see no reason to preclude liability here using the sixth public policy factor.

¶ 20. We therefore conclude the circuit court improperly granted summary judgment in favor of Progressive and Allstate. Contrary to the circuit court's decision, the public policy factors do not support abrogating liability in this case.

¶ 21. Allstate argues it is nonetheless entitled to summary judgment because Jorgensen was not Chase's statutory owner for purposes of the dog injury statute. Allstate's argument requires us to interpret and apply WIS. STAT. § 174.001(5), which defines an "owner" as "any person who owns, harbors or keeps a dog." Statutory interpretation and application are questions of law. *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶ 15, 326 Wis. 2d 586, 786 N.W.2d 759.

¶ 22. Allstate juxtaposes two decisions in which Wisconsin courts have addressed whether an individual was a statutory owner under WIS. STAT. § 174.001. In *Pattermann v. Pattermann*, 173 Wis. 2d 143, 150, 496 N.W.2d 613 (Ct. App. 1992), we concluded that a homeowner did not "keep" a dog because the homeowner

158

merely directed where the visiting dog was to be temporarily placed and did not feed or care for the dog in any way. We further concluded that the homeowner did not "harbor" the dog because the dog's "transient invasion" did not amount to lodging, shelter, or refuge. *Id.* at 151. By contrast, in *Pawlowski*, 322 Wis. 2d 21, ¶ 31, our supreme court held that a homeowner harbored a dog she allowed to reside in her home.

¶ 23. The facts of this case are much closer to those in *Pawlowski* than those in *Pattermann*. For the time that Plamann was away, Jorgensen sheltered, maintained, and protected Chase on her premises. *See Pawlowski*, 322 Wis. 2d 21, ¶ 31. Unlike the homeowner in *Pattermann*, Jorgensen made sure that Chase had water throughout the day, let him outside, and occasionally checked on him. She did far more than provide a "meal of mercy to a stray dog" or permit Chase's "casual presence" on her property, both situations that we have concluded do not give rise to liability. *Pattermann*, 173 Wis. 2d at 151. Accordingly, we conclude Jorgensen both kept and harbored Chase and was therefore an owner for purposes of WIS. STAT. § 174.02.

*By the Court.*—Judgments reversed and cause remanded for further proceedings.