COURT OF APPEALS
DECISION
DATED AND FILED

January 8, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1186**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV2059

IN COURT OF APPEALS
DISTRICT IV

JEFFREY M. POLFUSS AND KAREN A. POLFUSS,

   PLAINTIFFS-APPELLANTS,

NETWORK HEALTH PLAN,

   INVOLUNTARY PLAINTIFF,

   V.

WISCONSIN MUTUAL INSURANCE COMPANY
AND CASSEE J. BUSCHKE,

   DEFENDANTS-RESPONDENTS.

        APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed and cause remanded*.

        Before Graham, P.J., Kloppenburg, and Taylor, JJ.

¶1 GRAHAM, P.J. A dog owned by Cassee Buschke bit her neighbor, Jeffery Polfuss, after Polfuss opened a storm door to Buschke's residence in an attempt to return an item that had been left at his home. Polfuss alleges that Buschke is liable under WIS. STAT. § 174.02 (2023-24),[1] and he appeals the circuit court order that granted summary judgment in her favor. On appeal, Polfuss argues that the court erred when it determined that his claim is precluded as a matter of law based on the undisputed facts and the court's analysis of the judicial public policy factors and our supreme court's decision in *Fandrey v. American Family Mutual Ins. Co.*, 2004 WI 62, 272 Wis. 2d 46, 680 N.W.2d 345. We agree and reverse the order granting summary judgment. As part of our analysis, we deny Buschke's motion to strike portions of Polfuss's reply brief.[2]

**BACKGROUND**

¶2 The following facts are derived from the pleadings, depositions, and interrogatories and are undisputed unless otherwise noted.

¶3 Buschke and Polfuss have lived next to each other for a number of years. Buschke's children and Polfuss's grandchildren often played together, both at Buschke's house and at Polfuss's house. It was not uncommon for Polfuss to walk over to the house to pick up his grandchildren. When doing so, Polfuss would go to the door at the back of the house, which is a storm door that opens into a mudroom. Through that door, which we refer to as the "mudroom door," it

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Polfuss's wife is also a plaintiff-appellant, and Buschke's insurer is a defendant-respondent. However, for simplicity, when referring to the parties we refer only to Polfuss and Buschke.

is possible to see into the mudroom and through a second door that opens into the kitchen.

¶4      Buschke owns a dog. Prior to the 2023 dog bite that is the subject of this appeal, there was an incident in 2022 in which the dog injured Polfuss when Polfuss was inside Buschke's mudroom picking up his grandchildren.[3]  Polfuss was somewhat "leery" of the dog following the 2022 incident, but the parties continued to allow the children to play inside Buschke's home when the dog was present.

¶5      The dog bite that is the subject of this appeal occurred in April 2023. That day, Buschke's children and Polfuss's grandchildren were playing together. At some point, the children took an ice pack from Buschke's house in order to treat a scraped knee. Then, at a later point when the children were at Buschke's house, Polfuss sought to return the ice pack. Polfuss approached the mudroom door, and he saw at least one of his granddaughters through the door.

¶6      The parties dispute where precisely in the kitchen Buschke was when Polfuss approached the mudroom door, whether Buschke was visible to

_____

[3] The parties dispute the nature and severity of the 2022 incident, but these disputes are not material to the public policy factors that are the subject of this appeal. With respect to the 2022 incident, Buschke stated that the dog "nipped" at Polfuss in defense after Polfuss closed the dog in a doorway and that Polfuss was bruised as a result, but Buschke does not "recall there being blood." In contrast, Polfuss stated that the dog "came at" him when he entered Buschke's home and bit him, breaking "the skin on [his] arm" and leaving a scar.

While this factual dispute is not material to our resolution of this appeal, it may be pertinent in the subsequent circuit court proceedings on damages, provided that Buschke is found liable for Polfuss's 2023 injury. This is because WIS. STAT. § 174.02(1) provides a gradated liability scheme. In all cases the owner faces potential liability for "the full amount of damages," § 174.02(1)(a), and potentially "for 2 times the full amount of damages … if the owner was notified or knew that the dog had previously, without provocation, bitten a person with sufficient force to break the skin and cause permanent physical scarring or disfigurement," § 174.02(1)(b).

Polfuss at that time, and whether Buschke "acknowledged" Polfuss in some way. But what happened next is undisputed. Polfuss did not knock when he reached the mudroom door. He instead opened the door, saying "where's the dog?" as he entered. Almost immediately, the dog ran up to Polfuss and bit his arm, resulting in a wound that required thirty stitches.

¶7  Polfuss filed this action against Buschke and her insurer. He claimed that Buschke is strictly liable under WIS. STAT. § 174.02(1), which is commonly referred to as the dog-bite statute.[4]  *See* § 174.02(1)(a) and (b) ("Subject to [WIS. STAT. §] 895.045 [which addresses contributory negligence] … the owner of a dog is liable for … damages caused by the dog injuring or causing injury to a person …."). Buschke denied liability, alleging, among other things, that Polfuss's injury was caused by his contributory negligence.

¶8  The case proceeded to discovery, where much of the focus was on the nature of the neighborly relationship between the Polfuss and Buschke families and the circumstances surrounding Polfuss's entry into Buschke's mudroom.

¶9  Polfuss stated as follows in his answer to an interrogatory. He and Buschke were "frequent visitors to each other's homes," and it was "common for each to stop over unannounced to pick up, drop off, or check in on one or more children." Polfuss gave the following account of the moments immediately before he was bit:

---

[4] Polfuss actually filed two claims under the dog-bite statute—one based on the 2022 incident and the second based on the 2023 incident that is the subject of this appeal—as well as a claim for defamation. The claims based on the 2022 indent and the claim for defamation were both dismissed and we discuss them no further.

> I saw the [mudroom] door was closed, but the interior door was open through the kitchen. I saw my grandchildren playing with the other children. I could also see Ms. Buschke in the kitchen. I did not see the dog. Ms. Buschke acknowledged me from the inside and approached. I pulled the [mudroom] door open to meet her and asked her where the dog was. I reached my arm into the kitchen to hand her the icepack. The dog came from an unseen area and latched onto my right arm.[5]

¶10    Polfuss gave a similar account during his deposition, though he equivocated about some of the details. He did not appear to waiver from his assertion that he could see Buschke in the kitchen as he approached the mudroom door, but he did express some uncertainty about whether and how Buschke acknowledged him. Polfuss and Buschke's counsel had the following exchange when counsel first asked about this topic:

> Q: In your [i]nterrogatory answers—these are the questions that you answered in writing earlier in the case—you said Ms. Buschke acknowledged you from the inside and approached. How did she acknowledge you?
>
> A: I'm trying to think, I don't know if she said, hi, Jeff or [pause]. Was that from the inside the house? I can't remember.
>
> [Polfuss's attorney]: Do you have that answer [so] that he can read the whole thing?
>
> A: Yeah can I see it?
>
> Q: Well, let me ask this: You don't have a recollection, as we sit here today, if she acknowledged you, correct?
>
> [Polfuss's attorney]: Form
>
> A: Correct, I don't know.

---

[5] Buschke argues that we should disregard this interrogatory response, and she filed a motion to strike portions of Polfuss's reply brief that cite and discuss the interrogatory response. We address Buschke's argument and her motion to strike in the discussion section below.

However, based on an exchange between counsel and Polfuss that occurred later in the deposition, it appeared that Polfuss recalled that Buschke acknowledged him verbally, but Polfuss did not recall the specific words that Buschke used:

> Q: The question is, in your [interrogatory] answer you said that ["]Ms. Buschke acknowledged me from inside.["]
>
> A: Mm-hmm.
>
> Q: Do you have any recollection of how she acknowledged you?
>
> A: I think she might have said, ["]hi Jeff["] or, ["]hi neighbor,["] something …
>
> Q: Are you guessing?
>
> A: I think yes. Yes, I'm thinking about—guessing about that one. I'm not quite sure.
>
> Q: Okay, I don't want you to guess because …
>
> A: No, I understand that. I understand that.
>
> Q: So you just don't know.
>
> A: It was either, ["]hi neighbor,["] or, ["]hi, Jeff.["]
>
> Q: But it's fair to say you—
>
> A: Yes.
>
> Q: —don't know, correct?
>
> A: Yes.[6]

Polfuss also testified that, to the best of his recollection, he had always knocked or announced himself on prior occasions when he visited the Buschke house, and he

---

[6] Buschke also argues that we should disregard Polfuss's deposition testimony about the acknowledgment, in part because she contends that it would be inadmissible because Polfuss lacked personal knowledge of the events and his recollection was incomplete and speculative. We address Buschke's arguments about admissibility in the discussion section below.

never entered the house without being acknowledged. He agreed with Buschke's counsel that Buschke never told him that he could enter the home uninvited.

¶11 Buschke provided a different account during her deposition. She testified that Polfuss "didn't come over a whole lot" and it was out of the ordinary to see him inside her home. Buschke further testified as follows. She had not given Polfuss permission to enter her home "without knocking or otherwise letting [her] know." On the day of the incident, Buschke was in the kitchen "talking to [the] girls," and "the next thing" she knew was that she "heard somebody come into [the] house and say 'where's that dog.'" Buschke did not know that it was Polfuss until she ran into the mudroom and saw him. Had Buschke known that Polfuss was coming over, she "would have restrained" the dog.

¶12 Buschke moved for summary judgment, arguing that she was not liable for Polfuss's injury arising from the 2023 dog-bite incident "as a matter of public policy" pursuant to *Fandrey*, 272 Wis. 2d 46. Specifically, Buschke cited *Fandrey* for the proposition that judicial public policy factors preclude liability when a dog is kept unrestrained inside its owner's home and the dog "bites someone who enters [the owner's] house without her knowledge or consent." *See id.*, ¶8. Buschke argued that, as in *Fandrey*, Polfuss "did not have express or implied consent" to enter the house where he was bit.

¶13 Polfuss opposed the motion. He argued, among other things, that *Fandrey* is distinguishable because "Polfuss's entry was not an intrusion" and was instead "a reasonable act consistent with the established neighborly relationship between the parties." Polfuss also cited *Fandrey* for the proposition that the public policy factors should be employed to preclude liability only if the factual scenario is "so extreme that it would shock the conscience of society to impose

7

liability." *See id.*, ¶15. Here, he argued, "[n]othing about [holding the dog owner liable under] the facts of this case shocks the conscience or undermines the principles of justice."

¶14 Following a hearing in which the parties were given the opportunity to present arguments, the circuit court granted Buschke's motion for summary judgment. Specifically, the court determined that ***Fandrey*** is "controlling precedent" and that here, as in ***Fandrey***, Polfuss entered Buschke's house without her consent. Under these circumstances, the court concluded, it would be "too disproportionate" to Buschke's culpability to impose liability because Polfuss "put himself in the position as a trespasser." The court also concluded that it would "shock [the] conscience to impose liability in a case like this" because it would require dog owners to lock up their pets "all the time no matter what is going on," which would place "an unnecessary burden on dog owners to not be able to enjoy their pets in their own home without fearing that they are going to be sued for someone entering without permission." Polfuss appeals.[7]

## DISCUSSION

¶15 We review an order granting a motion for summary judgment de novo, applying the same methodology as the circuit court. ***Racine County v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88. Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[7] In their appellate briefs, both parties often cite to the appendix without including parallel citations to the appellate record. We remind counsel of the obligation to follow the rules of appellate briefing in WIS. STAT. ch. 809. *See* WIS. STAT. § 809.19(1)(d)-(e) (providing that briefs must contain "appropriate references to the record" and "citations to the … parts of the record relied on"); ***Balsimo v. Venture One Stop, Inc.***, 2024 WI App 58, ¶4 n.2, 414 Wis. 2d 27, 13 N.W.3d 228 (providing that "the appendix is not the record").

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). When considering a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party, *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986), and "if more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate," *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294.

¶16 WISCONSIN STAT. § 174.02(1) provides that, subject to the statute addressing contributory negligence, "the owner of a dog is liable for" either the full amount or double the full amount of "damages caused by the dog injuring or causing injury to a person …." § 174.01(1)(a) and (b). In describing the effect of the dog-bite statute, our supreme court has stated that it "imposes strict liability on a dog owner for injuries caused by the dog" and "obviates the need for a plaintiff to prove specific acts of negligence." *Fandrey*, 272 Wis. 2d 46, ¶9. Accordingly, a plaintiff bringing a personal injury claim under the dog-bite statute need not prove specific acts of negligence, and need only prove causation and damages. *Id.* This aligns with the purpose of the statute, which is to hold the person who "owns, harbors, or keeps a dog responsible for injuries" and "to protect those people who are not in a position to control the dog." *Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶76, 322 Wis. 2d 21, 777 N.W.2d 67 (citation omitted).

¶17 At the same time, the strict liability imposed by WIS. STAT. § 174.02(1) is not the same thing as "absolute liability." *Fandrey*, 272 Wis. 2d 46, ¶9 n.5. Among other things, a plaintiff's contributory negligence may reduce the amount of recovery or bar recovery altogether. *See* § 174.02(1) (providing that the

liability imposed by the strict liability statute is "[s]ubject to [WIS. STAT. § ]895.045]"); § 895.045 (setting forth rules regarding contributory negligence). Generally speaking, issues of comparative and contributory negligence are matters for a jury to decide. *See, e.g.*, **Gross v. Denow**, 61 Wis. 2d 40, 48, 212 N.W.2d 2 (1973).

¶18 Separately, a court might conclude that liability is precluded as a matter of law based on the court's analysis of the so-called public policy factors. This determination is a judicially imposed "limitation[] on liability," which is based on the court's assessment of the public policy factors and its determination that it would be "unfair to hold the party liable." *See* **Fandrey**, 272 Wis. 2d 46, ¶11 (citing **Palsgraf v. Long Island R.R., Co.**, 248 N.Y. 339 (1928) (Andrews, J., dissenting) (citation modified). To make this determination, the court considers six factors, all of which were first articulated in the development of the common law of negligence. *Id.*, ¶1 n.1; *see also* **Pawlowski**, 322 Wis. 2d 21, ¶59. These factors consider whether:

> [1] the injury is too remote from the negligence or [2] too "wholly out of proportion to the culpability of the negligent tort-feasor," or [3] in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or [4] because allowance of recovery would place too unreasonable a burden upon [a class of tortfeasors], or [5] be too likely to open the way to fraudulent claims, or [6] would "enter a field that has no sensible or just stopping point."

*Pawlowski*, 322 Wis. 2d 21, ¶59 (quoting *Colla v. Mandella*, 1 Wis. 2d 594, 598-99, 85 N.W.2d 345 (1957) (alterations in original)).[8]

¶19      Although any one of these public policy factors might be dispositive, *Fandrey*, 272 Wis. 2d 46, ¶29, dismissing a claim based on the public policy factors is reserved for cases where the facts are "extreme" and it would "shock the conscience of society to impose liability," *id.*, ¶15 (citing *Pfeifer v. Standard Gateway Theater*, 262 Wis. 229, 238, 55 N.W.2d 29 (1952)).    In those extraordinary cases, courts may "step in and hold as a matter of law that there is no liability." *Id.*

¶20      Like this case, *Fandrey* also addressed a WIS. STAT. § 174.02(1) claim arising from a dog bite that occurred in the dog owners' home.  There, at a time when the dog owners were not home, one of their friends entered the house with a three-year-old child in order to drop off a plate of cookies.  *Fandrey*, 272 Wis. 2d 46, ¶3.  The front door was unlocked, but it was undisputed that the dog owners had not been expecting visitors and had not given their friend permission to enter their house when they were not home.  *Id.*  As the friend was leaving a note, the child wandered off into another room and was bitten by the dog.  *Id.*

---

[8] We observe that our supreme court has articulated the second factor in two different ways.  In *Fandrey*, for example, on one occasion the court said that the question was whether "*recovery* [was] too 'wholly out of proportion'" to the defendant's culpability, *Fandrey v. American Family Mutual Ins. Co.*, 2004 WI 62, ¶1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345 (emphasis added), and on another occasion, the court said that that question was whether "*the injury* was too wholly out of proportion" to the defendant's culpability, *id.*, ¶15 n.12 (emphasis added).  In this opinion, we use the formulation set forth in *Pawlowski v. American Family Mutual Ins. Co.*, 2009 WI 105, ¶76, 322 Wis. 2d 21, 777 N.W.2d 67, which directly quotes the court's earlier decision in *Colla*.  The distinction is not dispositive in this case, and under either formulation, our conclusion is the same.

¶21    Under these circumstances, our supreme court determined that liability was precluded as a matter of law based on the undisputed facts and the court's analysis of the public policy factors.    Among other things, the court determined that allowing recovery "would be too out of proportion with the culpability of the [dog owners]," given that the only thing they did "wrong" was to "leave their door unlocked."  *Id.*, ¶34.  The court also determined that "liability … would place too unreasonable a burden on the [dog owners]" because it was unforeseeable that the friend would enter the house when they were not home, and because it would be "unreasonable" to "require[e] homeowners to do anything more than keep their dogs in the house when the homeowners are away."  *Id.*, ¶35. Finally, the "undisputed facts" supported a conclusion that the friend "did not have actual or implied consent to enter the [dog owners'] home."  *Id.*, ¶38.  If liability were to be imposed under those facts, the court stated, "the door would be open to imposing liability on homeowners when a burglar enters [their] home and is injured by a dog."  *Id.*, ¶39.  Accordingly, the court concluded, recovery "would enter a field that had no sensible or just stopping point."  *Id.*, ¶36.

¶22    We now turn to the case at bar.  Polfuss argues that the circuit court erred in granting summary judgment based on the public policy factors.  Among other things, he argues that the facts here are materially different from the facts in *Fandrey*, and that there is a genuine dispute of fact about whether Buschke acknowledged him before or as he opened the mudroom door and stepped inside. In her response, Buschke argues that *Fandrey* is directly on point.  She also argues that we should disregard the evidence in the summary judgment record that would support an "acknowledgment" theory, and she filed a motion to strike portions of his reply brief asking us to disregard those and other facts largely on the same ground.

¶23    We begin by considering and rejecting Buschke's argument that we should not consider certain facts that are part of the summary judgment record. We then turn to whether Buschke is entitled to summary judgment.

**I**

¶24    As noted, in her response brief and then more forcefully in her motion to strike, Buschke argues that we should not consider certain evidence in the summary judgment record. Specifically, Buschke takes aim at evidence in the record that could support a finding that Buschke acknowledged Polfuss in some manner before or as he entered the mudroom.

¶25    In particular, Buschke points to the above-cited interrogatory response and deposition testimony on this topic, both of which were included in the summary judgment materials that were filed in the circuit court. Indeed, it was Buschke who included these items as exhibits to the affidavit she filed in support of her motion. Even so, Buschke contends, we should not consider the arguments Polfuss makes about this evidence because Polfuss did not specifically reference or cite the evidence in his circuit court brief opposing the motion or in the argument his counsel made during the hearing before the circuit court. Therefore, she argues, Polfuss has forfeited any reliance on this evidence on appeal.[9] Buschke asks us to strike certain pages in Polfuss's reply brief for that same reason, and also because, she contends, the brief's assertions about the evidence

---

[9] Buschke uses the word "waiver," but her argument is based on the concept of forfeiture. *State v. Ndina*, 2009 WI 21, ¶¶28-29, 315 Wis. 2d 653, 761 N.W.2d 612 (discussing the differences between waiver and forfeiture).

"[m]ischaracterize[] … the record" and are "unsupported by" any admissible evidence in the record.[10]

¶26    We start with Buschke's argument that Polfuss forfeited any reliance on the acknowledgment evidence.   As noted, the interrogatory answer and deposition testimony in question are part of the summary judgment record, and therefore, we may consider them as part of our de novo review on appeal. *See Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶34, 236 Wis. 2d 435, 613 N.W.2d 142 (providing that appellate summary judgment review allows the court to consider those "proofs that were before the circuit court" at the time of the summary judgment decision).  It may have been better advocacy for Polfuss's counsel to specifically point to these portions of the interrogatory answer and deposition transcript as part of the presentation of his argument to the circuit court. However, counsel's failure to do so neither forecloses our consideration of that evidence in our de novo review, nor forecloses, under the circumstances here, Polfuss from making arguments based on this evidence on appeal.

¶27    As a general rule, when a party fails to raise an issue before the circuit court, the party forfeits that issue on appeal.  *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177. That is not what happened here.  To illustrate, in his circuit court brief, Polfuss

---

[10] In addition to arguing that we should disregard Polfuss's arguments about the acknowledgement evidence, Buschke also argues that we should disregard certain assertions that Polfuss makes in his briefing, including his assertions that Buschke "never filed a police report" claiming that he was a trespasser and that she conceded that this was her dog's second bite. According to Buschke, both assertions are false and unsupported by any record evidence, and had Polfuss made these assertions during the circuit court proceedings, Buschke would have introduced evidence to demonstrate that they are false.  We agree with Buschke that these two assertions are not supported by any evidence in the summary judgment record and we disregard them on that basis.

argued that he could see Buschke in the kitchen doorway as he approached and his "entry [into the mudroom] was not an intrusion." Then, during the hearing, his counsel argued that Buschke's presence and conduct at that time explained why Polfuss did not think he had to knock before entering. Specifically, counsel argued that Polfuss "sees … Buschke[] standing in that porch breezeway area" as he approached, and he asserted that it would seem "very odd" and "suddenly very formal" for Polfuss to ring the doorbell when Buschke was right there "staring" at him through the mudroom door. Counsel's position was that "there's a jury question on whether or not he had permission to come onto the premises."

¶28    At its core, Polfuss's argument on appeal is the same. That is, he argues that there is a factual dispute as to whether he had permission to enter Buschke's home on the day of the injury. It is true that Polfuss has now chosen to support the issues and arguments he raised in the circuit court by emphasizing different facts from the summary judgment materials, but Buschke does not identify any legal authority to support the position that an appellant is prohibited from citing portions of the record if the appellant did not cite those portions in the circuit court.

¶29    Buschke may be arguing that the policies underlying the forfeiture rule support its application here. *See* ***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (addressing the policies). Specifically, she argues that if Polfuss had referenced the acknowledgment evidence during the circuit court proceeding, she would have developed an argument that the evidence was not admissible or provided additional contrary evidence beyond what is included in the summary judgment record. We are not persuaded.

¶30     Beginning with admissibility, Buschke has now had the opportunity to develop her argument that the acknowledgment evidence is inadmissible, and it is not persuasive.  According to Buschke, Polfuss admitted during his deposition that he could not recall whether Buschke acknowledged him from her position in the kitchen doorway, but we do not read the testimony that way.  Considering the testimony in context and in the light most favorable to Polfuss, as we must, we understand him to have testified that he recalled being acknowledged, but not the precise words Buschke used to acknowledge him.  Buschke also argues that the testimony would be inadmissible because his recollections were incomplete and speculative.  Again, we disagree.  Although Polfuss's testimony was light on specific details, his lack of certainty goes to the weight of the testimony, which is for the jury to assess, rather than to its admissibility.  *See* ***State v. Perkins***, 2004 WI App 213, ¶15, 277 Wis. 2d 243, 689 N.W.2d 684 ("It is the jury's job to resolve any conflicts or inconsistencies in the evidence and to judge the credibility of the evidence.").

¶31     We now turn to Buschke's argument that, had Polfuss pointed to the acknowledgment evidence during the circuit court proceedings, Buschke could have submitted "additional proof to address evidentiary insufficiencies …, including evidence not contained in the … record on appeal."  It is true that "[a]pplication of the [forfeiture] rule is appropriate where a [forfeited] argument could have been rebutted with factual information."  ***Gruber v. Village of North Fond du Lac***, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 69.  Here, however, Buschke does not identify any evidence that she could have presented which would have called Polfuss's account into question to such a degree that we would conclude that there was no genuine issue of fact.  Perhaps Buschke might have introduced more evidence that would support her version of events, but all

16

that would have done is to further demonstrate a dispute of fact, which would undermine Buschke's argument for summary judgment. For all of these reasons, we will not disregard Polfuss's arguments on the basis of the forfeiture doctrine.

¶32 Before concluding on this point, we address what we understand to be the remaining argument in support of Buschke's motion to strike. As noted, Buschke asks us to strike certain pages of Polfuss's reply brief because, she contends, they "[m]ischaracterize … the record" by making assertions that are "unsupported by" any admissible record evidence. As we best understand, Buschke's argument is that Polfuss's reply brief mischaracterizes his deposition testimony about his proximity to Buschke at the time he opened the mudroom door. Specifically, Buschke argues that Polfuss's reply suggests that "the parties were face-to-face or a foot apart," which, Buschke argues, is inconsistent with Polfuss's deposition testimony that she was in the kitchen.

¶33 We do not agree that the reply mischaracterizes the evidence. As discussed, it is undisputed that the mudroom door opens to the mudroom, and there is another door in the mudroom that opens into the kitchen. Polfuss has consistently taken the position that he saw Buschke in that kitchen doorway, and Buschke herself testified that the mudroom door and the kitchen door are "a few feet" apart. In any event, if Polfuss's arguments stretch the significance of the record evidence, this is not unheard of in appellate briefing and this court is well equipped to handle such situations. We consider the evidence in the record, rather than any party's characterization of that evidence, and therefore, even if Polfuss has exaggerated the import of some of the evidence in the record, that does not provide a basis to strike those arguments in his brief.

## II

¶34    We now address whether Buschke is entitled to summary judgment. Buschke argues that the ***Fandrey*** case stands for the proposition that the public policy factors necessarily preclude a dog owner's liability for a dog-bite injury if the bite occurred in the dog owner's home and the injured party entered the home without the dog owner's knowledge or consent.  She further argues that here, the undisputed facts show that Polfuss entered Buschke's home without her knowledge or consent.  Therefore, she argues, the public policy factors preclude liability and she is entitled to judgment as a matter of law.  We disagree for several reasons.

¶35    First, we do not necessarily read ***Fandrey*** as setting forth an ironclad rule that would preclude liability based on the public policy factors any time an injured party enters a dog owner's home without the owner's knowledge or consent.  Generally speaking, the application of the public policy factors turns on the specific facts of the case, and we have previously explained that in public policy cases, "prior decisions seldom dictate the result in subsequent cases." ***Tesar v. Anderson***, 2010 WI App 116, ¶12, 329 Wis. 2d 240, 789 N.W.2d 351; *see also* ***Erdmann v. Progressive N. Ins. Co.***, 2011 WI App 33, ¶9, 332 Wis. 2d 147, 796 N.W.2d 846 ("we have repeatedly cautioned that the application of public policy [factors] to bar liability must be done on a 'case-by-case' basis").

¶36    Although the lack of the dog owner's knowledge or consent to enter the home was certainly important to the ***Fandrey*** court's analysis, the court also relied on a number of other undisputed facts as part of its determination that the public policy factors precluded liability in that case.  For example, the court considered the undisputed facts showing that the injury occurred when the dog

owners were away from the home and not expecting visitors, and that the owners had done all that could reasonably be expected of them under the circumstances, which was to keep the dog inside the home when they were away. The court specifically emphasized there was nothing more that the dog owners could do at the time to further control their dog, except to keep the dog kenneled, muzzled, or under lock and key. *Fandrey*, 272 Wis. 2d 46, ¶35. And the court stated that it would be "unreasonable to force homeowners to keep their homes and dogs under lock and key at all times to avoid liability." *See id.*, ¶¶34-35. Accordingly, the decision in *Fandrey* did not turn exclusively on the dog owners' lack of knowledge or consent.

¶37 Second, even if we were to assume that Buschke has correctly described the rule from *Fandrey*, summary judgment would not be warranted because there are genuine issues of disputed fact about Buschke's knowledge and consent. Looking at the facts in the light most favorable to Polfuss, as we are required to do as part of the summary judgment methodology, there is evidence in the record that Polfuss and Buschke were "frequent visitors to each other's homes," and that it was "common" for them to stop over at each other's homes "unannounced" to pick up or check in on the children. There is also evidence in the record that on the day of Polfuss's injury, he went to Buschke's house at a time when his grandchildren were present in the home, and that Buschke saw him approach the mudroom door and acknowledged him in some way. To be sure, Buschke vehemently disputes Polfuss's account, but that just demonstrates that the facts about knowledge and consent are disputed. Accordingly, unlike *Fandrey*, this is not a case in which the "undisputed facts" support the conclusion that Polfuss "did not have actual or implied consent to enter" Buschke's mudroom door. *Id.*, ¶39.

19

¶38    Finally, putting to the side the disputed facts about knowledge and consent, even assuming that Buschke did not acknowledge Polfuss in any way, we are not persuaded that this is an "extreme" case that would warrant application of the public policy factors to bar liability.  That is, on our de novo review, we do not think that it would "shock the conscience" that Buschke would be liable under these circumstances for injuries caused by her dog.  *See* *id.*, ¶15 ("in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability"); *id.*, ¶6 ("Whether public policy acts as a bar to a claim in any given case is a question of law that this court decides de novo.").

¶39    The evident policy underlying the dog-bite statute is to make dog owners responsible when their dogs cause injury.  And here, unlike in *Fandrey*, the undisputed facts do not establish that Buschke did all that was reasonably possible to prevent her dog from causing injury.  That is, this is not a situation where Buschke was not present and not expecting visitors and had done all that would be reasonably expected to control her dog on the day of the incident.  As noted, there were guests (the Polfuss grandchildren) at the Buschke home throughout the day, and Buschke was also present and presumably able to supervise and control the dog.  Although there is nothing in the record to suggest that the dog had acted aggressively towards anyone other than Polfuss, dogs can have unpredictable behavior, and here the dog was roaming freely in the home while invited guests came and went.  Under these circumstances, it does not "shock the conscience" that a dog owner would be liable for injury when the dog (who is ostensibly under his owner's control) runs up and bites a neighbor after the neighbor did nothing more threatening than to open an exterior door to a mudroom.  We therefore are not convinced that imposing liability would be "too

20

out of proportion with [Buschke's] culpability," "place too unreasonable a burden" on her, or "enter a field that has no sensible or just stopping point." *See **id.***, ¶¶15, 34-36. Although a jury might end up determining that Polfuss was negligent to a degree that precludes his recovery, this case is not so extreme that his claim cannot proceed as a matter of law.

## CONCLUSION

¶40 For the reasons explained above, we reverse the grant of summary judgment and remand to the circuit court. Separately, we deny the motion to strike.

*By the Court.*—Order reversed and cause remanded.

Not recommended for publication in the official reports.

21